ILLINOIS CENTRAL RAILROAD COMPANY *v.* ARTHUR ABRAMS.

1. **PLEADINGS.** *Declaration. Antagonistic causes of action. Same count.*
   A declaration, with but one count, stating two antagonistic causes of action will not sustain a verdict for plaintiff on either cause of action, where the jury were instructed in respect to both and it cannot be ascertained which of the instructions were controlling.

2. **SAME.** *Master and servant. Railroads. Fellow-servants. Constitution 1890, sec. 193. Code 1892, § 3559.*
   A cause of action predicated of the master's negligence, in failing to furnish his servant a safe place in which to work, is inconsistent and should not be joined in the same count with a cause of action arising from the negligence of a fellow-servant, based on Constitution 1890, sec. 193, and Code 1892, § 3559, modifying the common-law fellow-servant rule.

FROM the circuit court of Madison county.

HON. ROBERT POWELL, Judge.

Abrams, the appellee, was plaintiff, and the railroad company, the appellant, was defendant in the court below. From a judgment in plaintiff's favor the defendant appealed to the supreme court. The opinion states the case.

*Mayes & Longstreet,* and *J. M. Dickinson,* for appellant.

To put this case in a nutshell, our propositions are:

First—That while this suit is brought under sec. 193 of the constitution and under sec. 3559 of the code, it is not maintainable under those sections, for the reason that it is a case not within their intent.

The instance declared on is the simple case of a gang of carpenters engaged in putting a new roof on a house. They were not doing railroad work in the constitutional or statutory sense of that term; and if the constitution and statute should be considered as applicable to work of this character, then both the statute and the constitution would be violative of the fourteenth amendment of the constitution of the United States under the rule laid down by this court in the case of *Ballard* v. *Mississippi Cotton Oil Co.,* 81 Miss., 507.

Secondly—Even if this case did fall under the constitutional and statutory provision above, and even if such constitution and statute were not violative of the fourteenth amendment as above, then still the plaintiff was not entitled to a recovery, because the proof in the case clearly shows that if there was any negligence in the transaction at all (which for the purpose of argument we will concede is settled against us by the verdict of the jury), such negligence was that of a fellow-servant, not his superior officer, and one engaged in the same department of labor and on the same piece of work; wherefore it falls within the exception provided for both in the constitution and in the statute, and in his case would still be controlled by common law principles.

Grant that the negligence existed, still it is a case where the work in which the parties were engaged was a piece of common carpentering such as the gang might just as well have been employed in doing for any private citizen on any private property anywhere in the land. It was not railroad work, and there was no reason why any special rule of liability should be imposed in such case on the employer.

It seems idle for us to do more than cite the case of *Ballard* v. *Mississippi Cotton Oil Co.* The opinion of the court there was so full, the investigation of authorities was so exhaustive and complete, and the rule announced by the court was so clearly stated, that there is nothing left for us to do, except to cite it. It is true that the point directly decided in the Ballard case was that ch. 66, Laws 1898, was unconstitutional because it included all corporations; but that decision was reached by argument of this court, which throughout asserted the principles for which we now contend; and it is the argument of this court which we now cite and rely on.

But if the case had been properly tried under common law principles, there would have been no liability.

The point of negligence which is sought to be made out by the evidence was that the scaffold was insecure for the reason that the crosspiece on which the planks rested, or, as it is called in this evidence, the ledger, was nailed with eight-penny nails only, whereas ten's or twenty's ought to have been used; and, further, that when Stokes called on Mr. Eaton for larger nails, Mr. Eaton said that there were none larger.

The case is sought to be brought under the rule which existed at the common law in regard to the furnishing of a secure place for the employes to work in; but it does not fall under that rule. If the place was insecure, it was insecure because only of the failure of the plaintiff's own fellow-servant, engaged in the very same job, to make it secure by using properly those common and sufficient appliances with which they had been furnished by the railroad company.

It would be ridiculous to talk about the railroad company being under any legal obligation to furnish to the plaintiff a completed scaffold for him to work upon. All that the company could do was to furnish him and the gang to which he belonged with adequate and sufficient materials out of which to build the scaffold, and to furnish him with adequate and competent co-employes with whom to work (and this case does not proceed

upon the line that his co-employes were either insufficient in number or in qualification).

It is perfectly manifest that the whole trouble in this case grows out of the fact that plaintiff's fellow-carpenter, Stokes, did not use a sufficient number of nails in fastening the cross-pieces to the upright. He used only four eight-penny nails.

There are plenty of "scaffold" cases in the books. The distinction is perfectly well marked between a permanent place for employes to work in (including scaffolds or other structures of that nature) and a mere temporary scaffold, the erection of which is part of the job itself. *Marsh* v. *Herman,* 47 Minn., 537; *Lambuth* v. *Miss. Pulp Co.,* 72 Vt., 278; *Killea* v. *Faxon,* 125 Mass., 485; *Reynolds* v. *Barnard,* 168 Mass., 226; *Perigo* v. *Brewing Co.* (Ind.), 52 N. E., 462; *Hogan* v. *Smith,* 125 N. Y., 774; *Butler* v. *Townsend,* 128 N. Y., 105, 110; *Noyes* v. *Wood,* 102 Calif., 389; *Hoar* v. *Merritt,* 62 Mich., 336; *Beesley* v. *Wheeler,* 103 Mich., 196; *Benn* v. *Null,* 65 Iowa, 407; *Cole Co.* v. *Admr.,* 51 Ohio St., 542, 558; *Griffith* v. *Railroad,* 5 Misc. Rep. (N. Y. Sup. Ct.), 320; *Strange* v. *McCormick,* 1 Phil., 156; *Moore* v. *Railroad,* 167 Pa. St., 495.

*A. K. Foote,* for appellee.

If sec. 193 of the constitution only dealt with those employes engaged with the actual operation of trains, it would never have been questioned, even by railroad counsel, but it goes further, using the term "every employe," in plain, unequivocal language, not subject to the rule of *ejusdem generis,* as the general words "every employe" comes first and does not follow that part relating solely to employes operating trains; also not subject (in this State, at all events) to a process of judicial limitation, limiting these words to employes only who are engaged in the operating of trains. "Such action by a court is nothing less than judicial legislation pure and simple," says Chief Justice Whitfield in the Ballard case in speaking of the action of the Alabama, Iowa, and Kansas courts in cases involving the con-

struction of statutes similar to the provisions of our constitution. Sec. 193, then, must stand as a whole·or fall as a whole. Chief Justice Whitfield's quotation from the case of *Smith* v. *L. & N. R. R. Co.,* 75 Ala., 449, in the Ballard case, states ably the reasons that have been advanced in support of the unconstitutionality of sec. 193, but we submit that the theory of the Alabama and other courts that have so held is wrong and not in accord with the decisions of the supreme court of the United States on the subject. The decisions above referred to were based on the erroneous theory that class legislation must operate on all alike—*i. e.*, not only on all within the class alike, but on those without alike also, if those without happen to be engaged in work similar to some particular kind those within the class engage in. For example, take the case at bar. Under the erroneous theory above referred to, sec. 193 would fall, because when the railroad (one of the class) happens to be building or repairing a depot, it is subjected to a different rule of liability for injury to its employes than an individual (one without the class) who happens to be building or repairing a house on an adjacent lot.

But such is not the true rule. The true test is this: "Does the classification operate equally on all within the class, and is there any substantial difference in the nature of the business as to warrant the classification?" If classification operates equally on all within the class, it makes no difference that there is inequality in some particular instances between members of the class and others out of the class, if in the first instance the classification is reasonable. *Tullis* v. *Lake Erie & W. R. Co.,* 175 U. S., 353 (44 L. ed., 194); *Magoun Case,* 170 U. S., 293 (42 L. ed., 1042); *Wenham* v. *State,* 58 L. R. A., 825, 826.

The fact that railroad corporations are engaged in a public business, the public character of that business, makes a sufficient difference for the maintenance of the classification. In *St. Louis, Etc., R. R. Co.* v. *Paul,* 173 U. S., 404 (43 L. ed.,

746; 19 Sup. Ct. Rep., 419), a statute subjecting railroad companies to a penalty for neglecting to pay any employe, whom they had discharged, with or without cause, or had refused to longer employ, the unpaid wages of such employe on the day of his discharge or the refusal to longer employ, was held constitutional. Chief Justice Fuller in that case said: "As this amendment rested on reasons deduced from the peculiar character of the business of the corporations affected and the public nature of their functions, and applied to all alike, the equal protection of the law was not denied." *Missouri P. Railway Co.* v. *Mackey,* 127 U. S., 295.

A case on all fours with the case at bar was recently decided by the supreme court of Missouri, in *Callahan* v. *St. Louis Merchants Bridge Terminal Railway Co.,* 60 L. R. A., 249, and it was held directly that the Missouri statute, which is similar to our constitution, did not violate the equality clause of the fourteenth amendment, although it did not confine the liability to acts performed in the operation of trains, but extended it to risks similar to those incurred by the employes of persons or corporations engaged in other lines of work.

*Eugene A. Howell,* on the same side.

Section 193 only applies to "any railroad corporation," and cannot be condemned for making an arbitrary classification, and is in fact a classification based upon a "substantial difference in the nature of the employment," and is not in conflict with the fourteenth amendment. This has already been repeatedly held. See *Barbier* v. *Connoly,* 113 U. S., 27 (28 L. ed., 923); *Soon Hing* v. *Crowley,* 113 U. S., 703 (28 L. ed., 1145); *Humes Case,* 115 U. S., 512 (29 L. ed., 463); *Mackey Case,* 127 U. S., 205 (8 Sup. Ct. Rep., 1161; 32 L. ed., 107); *Herrick Case,* 127 U. S., 211 (8 Sup. Ct., 1176); *Beckwith Case,* 129 U. S., 32 (9 Sup. Ct., 209; 32 L. ed., 585); *Pontius Case,* 157 U. S., 209 (15 Sup. Ct., 585; 39 L. ed., 675); *Ellis Case,* 165 U. S., 150 (17 Sup. Ct., 255; 41 L. ed., 666); *Ma-*

*goun Case,* 170 U. S., 293 (18 Sup. Ct., 594; 42 L. ed., 1037);
*Paul Case,* 173 U. S., 404 (19 Sup. Ct., 419; 43 L. ed., 746);
*Mathews Case,* 174 U. S., 96 (43 L. ed., 909); *Tullis Case,*
175 U. S., 348 (20 Sup. Ct., 136; 44 L. ed., 192); *Erb* v.
*Morasch,* 177 U. S., 584 (44 L. ed., 897); *Sugar Refining
Case,* 179 U. S., 89 (45 L. ed., 162); *Williams* v. *Fears,* 179
U. S., 270 (45 L. ed., 186); *Cargill* v. *Minnesota,* 180 U. S.,
452 (45 L. ed., 619); *Kansas City Stock Yard Case,* 183 U. S.,
79 (46 L. ed., 92); *Clark* v. *City Titusville,* 184 U. S., 329
(46 L. ed., 569); *Sewer Pipe Case,* 184 U. S., 540 (46 L. ed.,
679).

*Harris & Powell,* on the same side

This suit was brought to recover damages for an injury sus-
tained by the plaintiff by reason of the master's failure to per-
form a positive personal and continuing duty which was owing
to the plaintiff, in that it failed to provide him with a reason-
ably safe place to work. This is the claim in the declaration.
It was to this point that the testimony was directed.

In considering the instructions asked and refused for the
defendant, the court will bear in mind the well-settled and ele-
mentary rule so familiar to the court: that the duty on the part
of the master to furnish to employes a safe place to work is a
personal duty which cannot be delegated. It is a responsibility
which is continuing, and however humble the employe may be
to whom this duty is assigned, the responsibility of the master
continues and the question of fellow-servant cannot arise. In
other words, the master cannot shift this responsibility and
claim that the negligence in performing the duty or discharging
the responsibility was that of a fellow-servant of the party in-
jured. It is the master's duty, whoever undertakes to perform
it.

Argued orally by *Edward Mayes,* for appellant, and *J. B.
Harris,* and *E. A. Howell,* for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

The declaration in this cause is rather a peculiar one. It seems chiefly to be a declaration framed on the ground that the defendant is liable because it failed to furnish the plaintiff a safe place in which to work; but it contains, also, isolated and· scattered clauses in which it characterizes Eaton as "the superior officer entitled to control and direct the services" of the carpenter gang. And these clauses seem to be some sort of an attempt, in rather an obscure fashion, to hold the defendant liable under sec. 193 of the constitution of 1890 and § 3559, Code 1892. And here it is to be noted that the declaration contains only one count. It is not a case of a declaration stating a cause of action in one count one way, and in another count another way. It is the case of a declaration which states the cause of action in one count two ways, the grounds of liability being also inconsistent with each other. Section 193 of the Constitution was not needed to enforce a common-law liability based on the failure of the defendant to furnish a safe place in which to work; it was adopted, as we have heretofore pointed out, to abrogate the absurdities of the common-law fellow-servant rule —a wholly distinct matter from that of liability arising out of failure to furnish a safe place in which to work. The one relates to the liability of the master; the fellow-servant rule was used to defeat the liability of the master on the ground that not the master, but a fellow-servant, was liable. But here is a declaration with but one count embracing two wholly independent grounds of liability. This sort of pleading has been declared indefensible in the recent case of *So. Ry. Co.* v. *Bunnell* (Ala.), 36 South, 382.

But this is not all. It is manifested from the whole record, and the briefs of counsel, that the case was tried in the ·court below chiefly on the ground of liability under sec. 193 of the constitution, though both grounds of liability are shown by the record to have been presented; liability under sec. 193 of the constitution, however, having been presented only on the part of

the plaintiff.  The court below gave instructions for both sides —fair and correct instructions on the whole—as to the common-law liability; but it at the same time, curiously enough, gave the plaintiff one instruction which was, in effect, a peremptory instruction on defendant's liability under sec. 193 of the constitution, whilst at the same time refusing (we do not now say whether correctly or not as to the true construction of said sec. 193) all instructions asked by the defendant on this ground of liability.  When the case gets to this court we find two elaborate arguments made by two of the counsel representing the appellee, resting their case on liability under sec. 193 of the constitution, and another able argument by another counsel for appellee, resting the cause on the common-law ground indicated.  If the cause had been rested on the common-law ground of liability, and the action had proceeded on that theory throughout below and here, the plaintiff might have been entitled to a judgment, unless this case falls within the principle of the "scaffold cases" pressed on us by appellant.  Whether this case is within that principle we leave an open question for the present.  But in view of the peculiar character of the declaration in this case, the manifest course which the trial took in the court below, and the complete change of front in this court, it would, it seems to us, be a manifest injustice to affirm a judgment thus obtained. It is impossible to know to which instructions to refer the verdict.  It is not a case for the application of the principle that the right result has been reached without reversible error having been committed.  Reversible error has been committed, plainly and flagrantly, in putting, in a declaration with but one count, two antagonistic causes of action, and in respect also of the course pursued in giving instructions as to both these antagonistic causes of action under this peculiar declaration.

*Reversed and remanded.*