MISSISSIPPI CENTRAL RAILROAD COMPANY* *v.* RUFUS R. HARDY.

[41 South. Rep., 505.]

1. MASTER AND SERVANT. *Pleadings. Defects. Aided by verdict.*

Where the declaration, in an action by a servant against the master for injuries suffered in the service, predicated plaintiff's right to recover of two alternate causes, only one of which, if true, imposed liability on the master, and on the trial a recovery was sought only upon the cause which imposed liability, and the testimony showed that the injury was attributable to that cause, and the instructions in legal effect forbade the jury to find for plaintiff on the other cause, a verdict for plaintiff will not be vacated because of the defect in the declaration, although defendant's demurrer thereto was overruled.

2. RAILROADS. *Defective track. Duty to repair. Injury to train crew.*

A railroad company cannot delegate the duty of keeping its tracks in a safe condition, and it is liable for injuries resulting to its servants operating trains from a failure to do so.

3. TRIALS. *Instructions. Error.*

Error cannot be predicated of the instructions given in a cause, if, when considered together, they correctly propound the law of the case.

*The appellant in this case is not the same "Mississippi Central Railroad Company" having a number of cases reported in the Mississippi Reports, from 32 Miss. to 52 Miss. That road extended from Canton northward to Jackson, Tenn., and was, after two or more changes of name, absorbed by the Illinois Central System. The appellant is a new railroad company, doing business between Hattiesburg and Brookhaven; its line is being extended on the west to Natchez and the company is said to contemplate an extension from Hattiesburg to Pascagoula.

4. SAME.  *Special emphasis to particular testimony.*

An instruction should be refused if it have special reference to the testimony of a certain witness.

5. SAME.  *Repetitions.*

It is not error to refuse a requested instruction simply repeating propositions contained in charges already given.

6. CONTRIBUTORY NEGLIGENCE.  *Burden of proof.*

Contributory negligence is an affirmative defense, and must be pleaded; and where pleaded the burden of proof thereof rests on the defendant.

7. APPEAL.  *Supreme court practice.   Modified instruction.   Questions not raised on trial.*

An appellant cannot assign error in the supreme court on the modification of an erroneous instruction; if not content with the instruction as modified, he should not have read it to the jury.

8. DAMAGES.  *Evidence.   Loss of earnings.*

In an action against the master for injuries to a servant, resulting in the latter's incapacity to perform the duties in which he was engaged, plaintiff should not be permitted to prove promises to him of promotion so as to enlarge his damages.

9. EVIDENCE.  *Appeal.   Objections not made on trial.*

An assignment of error cannot be predicated of the answer of a witness, not responsive to any question propounded to him, where no effort was made by the appellant in the trial court to have it excluded.

10. SAME.  *Failure to object to testimony.*

Where an objection to testimony because of incompetency does not appear except by considering it in connection with other testimony, to which no objection was made in the trial court, an assignment of error cannot be predicated of it in the supreme court.

11. SAME.  *Irresponsive answer.*

The supreme court will not entertain an objection to the answer of a witness, not responsive to any question asked him, if the appellant made no effort in the trial court to have the answer excluded.

12. SAME.  *Excessive damages.*

Evidence examined and ten thousand dollars adjudged not to be an excessive recovery.

FROM the circuit court of, second district, Perry county.

HON. WILLIAM T. McDONALD, Judge.

Hardy, the appellee, was plaintiff in the court below; the railroad company was defendant there. From a judgment in plaintiff's favor the defendant appealed to the supreme court. The suit was for personal injuries sustained by appellee by reason of the derailment of appellant's locomotive on which appellee was working as a fireman at the time of the injury. Appellee was engaged in his duties as fireman and was on the tender of the locomotive when it became derailed and appellee was caught between the tender and cab and fastened in the wreckage, receiving injuries on the head and leg, suffering physical and mental anguish, and is still a cripple. The declaration alleged that the injuries were due to the negligence of the defendant company, in that the front trucks did not have the proper gauge or were out of gauge; that a flange of a wheel of said truck was badly worn; that the switch where the derailment occurred was not properly constructed, or was not properly adjusted at the time of the accident, so that the truck split the switch; that the defendant failed to provide a safe way or track, as was its duty, over which to run its trains; that the defendant negligently failed to supply all the cars in said train with air brakes, which, had they been supplied, would have enabled the engineer to have stopped the train promptly and averted the injuries of which complaint is made. Plaintiff further averred in the declaration that the accident which caused his injuries was due wholly to the negligence of the defendant railroad, without any fault or negligence on his part.

The defendant demurred to the declaration on the ground of duplicity, uncertainty and insufficiency. The demurrer was overruled. The case went to trial on the merits, and the jury awarded the appellee $10,000 as compensatory damages. Among the numerous errors assigned, which are treated in the opinion of the court, is one based upon the modification of the

eleventh instruction asked by the defendant, which is as follows, the modification being indicated by italics:

"No. 11.   Before the plaintiff is entitled to recover in this case he must establish to the satisfaction of the jury and by a preponderance of the evidence, first, that the trucks of the engine did not have the proper gauge, or were out of gauge; or, second, that the flange of the left wheel of the front truck was worn so as to make it unfit for use; or, third, that the defendant negligently failed to supply the cars in said train with sufficient air brakes; *or, fourth, that the switch where the derailment occurred was not properly adjusted at the time of the accident, and a failure so to do was the proximate cause of the injury to plaintiff.*"

*S. E. Travis,* for appellant.

The plaintiff seems to have been unsettled as to any single ground of recovery, and attempts to attribute the injury to one or more of many different neglects on the part of the defendant.

The plaintiff's demurrer to the declaration having been overruled, proceeded to develop the case with testimony, over the objection of the defendant, in the hope of recovering either on the idea that the master did not furnish a safe way and machinery, or that a fellow servant was negligent in failing to couple up the air brakes. It was not possible. The demurrer should have been sustained. See, in this connection, *Railroad Company* v. *Abrams,* 84 Miss., 456 (s.c., 36 South. Rep., 542); *G. & S. I. R. R. Co.* v. *Bussey,* 79 Miss., 597 (s.c., 31 South. Rep., 212).

Instruction number one for plaintiff is erroneous. It tells the jury to find for the plaintiff, if he was injured as a result of the derailment, if the derailment occurred because of the negligence of the defendant in failing to provide a safe switch at the point of the derailment, or in failing to provide front or leading pony trucks for the locomotive of the proper gauge. There is no testimony at all to the effect that the pony trucks

were out of gauge. The only testimony on that subject was that the flange on one of the wheels was worn some. The testimony shows, with no contradiction, that the switch was put in perfect order the day before.

 Instruction number two for plaintiff is fatally erroneous. The court will remember that there is only one allegation in the declaration relative to equipment—failure to supply all the cars in the train with air brakes—while this instruction tells the jury that if the defendant failed in any respect whatever to equip the train, or if it was only partially equipped in any respect, and the plaintiff's injury resulted therefrom, that the defendant is liable and the jury will so find.

No railroad company can live up to such standard. To keep its machinery perfect in all respects would be a greater task than for a human being to keep himself perfect in all respects. There is no theory upon which such instruction can be upheld. This is a shot at every imaginable failure in equipment, and the plaintiff should certainly have been confined to his declaration. This instruction proceeds on the idea that the defendant was required at all hazards to have absolutely safe appliances.

Instruction number three for plaintiff is also erroneous. It tells the jury that if the derailment was caused either by the pony trucks being out of proper gauge, or by the switch where the derailment occurred being defective, or both combined (whether defendant was negligent or careful) the defendant is liable; still proceeding on the theory that the defendant was required to have an absolutely safe way and appliances, in all events and under all circumstances.

Instruction number four is also erroneous. It tells the jury that if the derailment was caused by defendant's· negligence, then the defendant is liable. It is not confined at all to the allegations contained in the declaration, but if the derailment is caused by defendant's negligence in any respect whatever, whether such negligence is mentioned in the declaration or not,

then the defendant is liable; holding to the theory that the defendant was required to have an absolutely safe way and appliances, not only in the respects mentioned in the declaration, but in all respects.

Instruction five is erroneous on the same ground. It also tells the jury that if the injury was due to the negligence of the defendant, then the defendant is liable, regardless of allegations or proof.

Instruction seven for plaintiff is also erroneous. It tells the jury if the injury was the direct result of the negligence of the defendant company the plaintiff is entitled to recover for the disabling effects of the injury, both present and prospective. This is certainly not the law. The defendant might have been negligent in some respects, and still not liable. It was certainly not liable for failures not mentioned in the declaration. It might have been negligent in some measure as regards the things mentioned in the declaration and still not be liable. It is only held to reasonable care. It was not liable for any injury that may have resulted after the use of reasonable care.

The court erred in modifying instruction seventeen asked for by defendant, by inserting the words "reasonably safe" instead of the words "master car builders' rules" and erasing "and that the defendant knew, or ought to have known the same were in such condition, before the jury can conclude that the defendant was negligent in this regard." If the flange was within the master car builders' rules it was reasonably safe. This is very important when we remember that Russell was the only witness who claimed that the flange was worn until it was condemnable, and he stated that the flange was "just under the gauge," barely condemnable, when the opposite truck was not worn at all. This very testimony went a long way to overcome lack of diligence on defendant's part, but as will be seen, the court kept up the idea that the defendant was required to have an absolutely safe way and absolutely safe appliances, destroying by instruction

the effect of such testimony. It is manifestly improper to hold that the defendant could be negligent as a master in this regard, to the extent that it was liable for an injury caused by negligent acts other than those which it knew or ought to have known of, by the exercise of reasonable diligence. If it was barely condemnable, the defendant may have been diligent and still ignorant of the fact. This modification in this instance is fatal. The master is not an insurer of the safety of his employes.

In support of our position that the court erred in modifying these instructions and in persistently keeping the idea before the jury in and by plaintiff's instructions and the modification of defendant's instructions, that the defendant was required to have absolutely safe way and appliances, see Bigelow on Torts, p. 301; Pierce on Railroads, p. 370; *Railroad Co.* v. *Wooley,* 77 Miss., 927 (s.c., 28 South. Rep., 26); *Clisby* v. *Mobile, etc., R. R. Co.,* 78 Miss., 937 (s.c., 29 South. Rep., 913); *Kent* v. *Railroad Co.,* 77 Miss., 496 (s.c., 27 South. Rep., 620); *Yazoo, etc., R. R. Co.* v. *Schraag,* 84 Miss., 125 (s.c., 36 South. Rep., 193).

These authorities are conclusive on the proposition that the defendant was not required to have an absolutely safe track and machinery. It is only when the master "knows or ought to know his premises, his machinery or his apparatus are unsafe" that the servant can recover for injuries by their defects. This idea is constantly excluded by the court from the consideration of the jury in this case, not only by the instructions for the plaintiff, but by the modification of instructions for the defendant.

*Alexander & Alexander,* and *George B. Power,* on the same side.

The damages are grossly excessive. We hazard nothing in saying that no case has come before this court where such heavy damages were awarded for personal injury of the kind and nature sustained by plaintiff. He was awarded a verdict for $10,000, and we are sure that a reading of the evidence touching

the extent of his injuries will show that such a verdict could not have been wrung from a jury except as the result of prejudice or the influence of incompetent evidence and erroneous charges touching the measure of damages.

It was fatal error to admit evidence for plaintiff as to his chances or expectation of promotion to a better position. He was a fireman and had been firing for more than a year. The utmost that could have legally been shown under the authorities as to this, that there was under the rules of the company some fixed gradation for promotion, or some definite period of service to promotion. Even such evidence would be doubtful, but under some of the authorities would be admissible. This exact question has been twice before the supreme court of the United States, and each time the admission of such evidence has been held to be reversible error. *Richmond & Danville R. R. Co.* v. *Elliott,* 149 U. S., 266, citing *Richmond & Danville R. R. Co.* v. *Allison,* 11 L. R. 'A., 43; *Brown* v. *Cummings,* 7 Allen, 507; *Brown* v. *Chicago, etc., R. R. Co.,* 64 Iowa, 652; *Chase* v. *Burlington Co.,* 76 *Ib.,* 675.

The same rule was announced in *Boston, etc., R. Co.* v. *O'Reilly,* 158 U. S., 336.

Another obvious error which necessarily increased the damages and operated generally to the prejudice of defendant was in the introduction of evidence as to the poverty of the plaintiff. Plaintiff was asked over the objection of defendant as to what his means of sustaining himself and wife after the injury occurred, and as to why he went away to live with his father-in-law, and he answered that he "did not have the means to stay here on; that he had no business to make a living at." This question was considered in *Railway Co.* v. *McClellan,* 80 Miss., 700 (s.c., 32 South. Rep., 283), and it was held error to admit evidence that the plaintiff was poor.

Plaintiff's instructions as to the measure of diligence required in providing safe machinery and appliances are obvi-

ously erroneous. Learned counsel for appellee, we are sure, will not contend that they announced the correct rule.

Plaintiff's fourth and fifth instructions authorize a recovery if the defendant was negligent—negligent in any manner, without regard to whether the negligence was that complained of in the declaration or shown by the proof. To understand the hurt-ful nature of this error it must be remembered that the declaration counts on five different acts or grounds of negligence. One or two of these seem to have been abandoned by the plaintiff. Whether they were or not, it was error by this instruction to turn the jury loose to decide whether or not there was any negligence of any kind shown instead of limiting them to the acts or grounds of negligence charged in the declaration. It cannot be claimed that this error is cured.

It is difficult to conceive on what grounds the court declined to give peremptory instruction to the effect that the switch was shown to be in good repair. All the witnesses who testified as to this condition did so from having seen it before the day of the accident. The proof is uncontradicted that it had been repaired and put in good shape just before the derailment.

It is equally difficult to understand why the court refused the fourth instruction for the defendant. It announced the simple proposition that if the train was equipped with sufficient air to operate under ordinary circumstances with reasonable safety, defendant was not liable merely because of failure to use air brakes. This brings us again to the question whether or not, as a matter of law, the court can say that every car should be equipped and supplied with air. If reasonable diligence required by ordinary circumstances of the operation of a train was the measure of ability, then this instruction is erroneous

The declaration in this case falls squarely within the condemnation of the rule announced in *Illinois, etc., R. R. Co.* v. *Abrams,* 84 Miss., 456 (s.c., 36 South. Rep., 542).

*Brame & Brame,* and *W. H. Hardy,* for appellee.

The court properly overruled the demurrer to the declaration. Without stating the evidence itself, we cannot well see how the pleader could have been more explicit. So far from being insufficient under Code 1892, § 671, cited by opposite counsel, we submit that his declaration is in strict accordance with the statute. The declaration condemned in *Conner.* v. *McLaurin,* 77 Miss., 373 (s.c., 27 South. Rep., 594), is wholly different from this.

If there was any uncertainty as to the precise nature of the complaint, it would not be proper in such case to sustain a demurrer and dismiss the suit.

"Where a declaration shows, though in a general way, a cause of action, but the allegations are indefinite or uncertain, so that the precise nature of the complaint is not apparent, the remedy is not by demurrer, but by motion to make the pleading more definite." Code 1892, § 704; *Jones* v. *Millsaps,* 71 Miss., 10 (s.c., 40 South. Rep., 440).

The instructions granted for plaintiff, we think, are peculiarly free from error. They are few and announce elementary principles.

Considering the great number of instructions asked by the defendant, and the necessity for prompt action thereon in the midst of a *nisi prius* trial, we think the modifications indicate a very fair and intelligent view of the case on the part of the trial judge. Allowance is to be made for the haste necessary in the trial of a cause, and for this reason this court is not hypercritical in passing upon technical objections to the action of the lower court in passing upon instructions and in other rulings.

The court will consider all the instructions together and as a whole, and it will see that the trial court was liberal to the defendant, and that every possible error that might be complained of in the rulings on the evidence and in the instructions

for plaintiff was cured by the instructions given for the defendant. The truth is that the defendant continued to ask instructions until the utmost limit of its rights in this regard was reached. Every possible phase of the law applicable to its theory of the case was submitted to the jury. Without giving a peremptory instruction to find for defendant, the court could not have gone further than it did go.

We hardly deem it necessary to cite authorities in support of the proposition that it was the absolute duty of the defendant to furnish plaintiff a reasonably safe way and appliances. Failure to do this was not the negligence of fellow servants, but the negligence of the defendant itself, and for which it was liable. On this branch of the case we do not consider it necessary to do more than cite *White* v. *Railway Co.,* 72 Miss., 12 (s.c., South. Rep., 248; 20 Am. & Eng. Ency. L., 519); *Railway Co.* v. *Bussey,* 82 Miss., 816 (s.c., 35 South. Rep., 166).

Under the evidence fixing the amount of damages the plaintiff was entitled to recover, was peculiarly within the province of the jury.

Who is to measure physical pain? Who is to fix the amount of compensation in money for mental suffering? Who is to determine the amount to be paid to a man for a crushed and an injured knee joint, and especially in the case of a man who, on account of his conditions and surroundings in life, is unable to follow any intellectual pursuits?

In *Hill* v. *Railway Co.,* 79 Miss., 587 (s.c., 31 South. Rep., 198), plaintiff demanded $30,000. He claimed actual damages of over $,1000 for doctor's bills; the loss of a tooth and permanent injury of an eye; total inability to work and permanent. injury to his health, and, although the jury found the issue in his favor, he was awarded $100 damages. On appeal, the court, among other things, said: "In actions sounding in damages, where the law furnishes no legal rule of measurement, save the discretion of the jury upon the evidence before them, courts will

not disturb the verdict upon the ground of excessive damages, unless it be so flagrantly improper as to evince passion, prejudice, partiality or corruption in the jury.    Upon a mere matter of damages, where different minds might and probably would arrive at different results and nothing inconsistent with an honest exercise of judgment appears, the verdict should be left as the jury found it."    *Railroad Co.* v. *Hurst,* 36 Miss., 660 (74 Am. Dec., 785) ; *Railroad* v. *Caruth,* 51 Miss., 77.

In *Railroad Co.* v. *Thompson,* 64 Miss., 584, a case of personal injuries, a verdict of $15,000 was sustained, the court saying: "It cannot be said that the damages of fifteen thousand dollars awarded by the jury are excessive.    We apprehend that but few, if any, persons would submit to the injury and suffering sustained by appellee for that sum."

Argued orally by *C. H. Alexander,* for appellant, and by *L. Bramer,* for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

A patient and careful examination of the entire testimony in this record makes it perfectly obvious that the proximate cause of the injury was the split switch and the defective trucks and flange.    The rails did not fit.    They had to be knocked together. After they were locked they still did not fit.    The trucks were out of order, and the flange of the wheel worn.    The derailment was caused by the improper condition of the track at the switch point and the defective trucks and flange.    It was the undelegable duty of the master to have the track in safe condition.    A careful and repeated examination of the instructions on both sides and of the declaration, taken in connection with this testimony, makes it very clear that the plaintiff proceeded upon the theory of the negligence of the company itself, and not the negligence of any fellow servant.    The evidence makes it plain that the adjustment of the switch referred to in the declaration was not an adjustment by a fellow servant; but the adjustment

referred to was the fitting of the rails together so that they would not split, so that there could be no split switch—an adjustment synonymous with construction. The declaration, after stating five specific grounds, expressly sums up by saying that the injury was due wholly to the negligence of the defendant; that is, the company itself. Looking back over the completed record, this case cannot be said to fall within the principles announced in the *Abrams case*, 84 Miss., 456 (36 South. Rep., 542). Whilst the declaration might have been more felicitously phrased, so as to say with more perspicacity that the adjustment referred to was the construction of the switch, yet since all the testimony and the whole course of the trial on the evidence and on the instructions show this plainly, the case is thus separated by a great distance from the extraordinary irregularities condemned in the *Abrams case*. There is no difficulty here, as there was in that case, in ascertaining the true line on which the plaintiff's case moved, from the declaration through the evidence and through the instructions to the verdict. Much is said about the train not being fully equipped with air, and much urged with reference to the injuries being due to the negligence of a fellow servant, and in regard to the adjustment of the switch, meaning by "adjustment" the improper handling of the switch by the employes charged with that duty, but the complete answer to all this is to be found in the fifteenth instruction given for the defendant itself, which is as follows: "The court further instructs the jury for the defendant that, although they should believe from the evidence that there was a car in this train not equipped with air brakes, yet if they believe from the evidence that it was the duty of the brakeman of said train to couple the air brakes in the cars of said train, and because of the brakeman's failure to perform this duty said air brake was not in use, then the defendant is not liable to the plaintiff because of any failure to have air brakes in use; that the brakemen on said train were fellow servants of said fireman, and the defendant is not liable to the plaintiff for

any injury resulting from the negligence of the brakeman on said train."

Besides, the other instructions, taken as a whole, show that no liability was sought to be imposed by reason of the negligence of any fellow servant in any respect. That instructions, taken together, properly announce the rule that the defendant must provide safe ways and appliances. There is no error in this respect. The seventh, eighth, twelfth and seventeenth instructions for defendant, as also the tenth, eleventh and nineteenth, cover this ground fully. The criticism that in some of the instructions for the plaintiff the negligence counted on is not the negligence alleged in the declaration is hypercritical. The tenth instruction for the defendant expressly charges the jury that the injury must "have resulted from the alleged negligence of the defendant." No other negligence than the negligence alleged in the declaration—to wit, the negligence of the company itself—could have been referred to in the instructions for the plaintiff; but this instruction for the defendant expressly advises them of the fact, and the eleventh instruction for the defendant actually enumerates the specific grounds of negligence set out in the declaration. Instructions cannot be objected to separately with any justice. The instructions must be taken as a whole, as one body, and announce, not the law for the plaintiff or the defendant, but the law of the case, and, so taken, if they reasonably advise the jury of the true principles applicable to the case made by the facts, that is all that is required as a guide for the twelve plain, practical men who sit in the jury box. Any other view would sacrifice substantial justice in a very large percentage of the cases appealed to this court.

The fourth instruction for the defendant was properly refused, because of a special reference to the testimony of the witness, Lee, and, besides, had been abundantly covered by instructions 7, 12, 15 and 18 for the defendant. The fifth instruction was properly refused, because there is not a shred of

evidence of any contributory negligence on the part of plaintiff, and so well satisfied was the defendant that he was not guilty of any contributory negligence that the defendant did not even plead contributory negligence.    Contributory negligence is an affirmative defense.    *McMurtry* v. *Railway,* 67 Miss., 601 (7 South. Rep., 401) ; *Simms* v. *Forbes,* 86 Miss., 412 (38 South. Rep., 546).

All the modifications in instructions Nos. 6, 10, 11, 15, 17 and 19, asked by the defendant, were proper as shown by the testimony in the case.    The only serious comment needed to be made as to modifications, is as regards the modification of the eleventh instruction for the defendant by the court, which modification consisted in adding these words :  "(4) That the switch where the derailment occurred was not properly adjusted at the time of the accident, and that the failure to do so was the proximate cause of the injury to plaintiff."    Of course, this instruction and all the instructions were given by the circuit judge looking back over the case made by the evidence, and it was just as clear to him then, as it is to us now, that the adjustment of the switch made out by the evidence was its failure to fit up tight and close as it should have done, and not the handling of the switch by an employe.    The instruction as asked was clearly erroneous, because it omitted absolutely the only real ground on which the plaintiff proceeded.    If the defendant did not choose to use the instruction as modified, it should not have read the same to the jury, but should have stood upon the error in the modification, if error there was therein.    This court said, in *Railroad Company* v. *Suddoth,* 70 Miss., 265 (12 South. Rep., 205) : "One who has asked an erroneous instruction cannot assign for error its modification ; for, if not content with it as modified, he should have declined to read it to the jury."    If the instruction had been correct as originally asked, then a modification might have been insisted on as error ; but it was erroneous as originally asked, and the modification made it correct as to the main point

in the case. We may say in one word, without further detail as to the instructions, that a body of instructions probably were never given a defendant railroad company drawn with more consummate care or evidencing more profound knowledge of the law applicable to every phase of the defendant's case. The defendant got all, and more than all, it was entitled to on the facts, and we do not think any reversible error can be found in the law of the case as charged by the learned judge below.

This brings us to the only other contentions we deem it necessary to notice. First, as to the admission of testimony regarding the plaintiff's prospects of promotion. This testimony is as follows: "*Q.* State whether or not you had any promise of promotion by any officer of the company. (Objected to; overruled; exception.) *A.* Nothing, only Mr. Bell, when I had the typhoid fever and got well and went to my boarding house—he was boarding at the same place—he says: 'I wish you had been well; I would have had you running an engine since you have been sick.' *Q.* Did he ever say anything to you afterwards about that? *A.* Yes, sir; that he had put in another man. He said I would have to wait awhile. *Q.* You would have to wait awhile before you could get an engine? *A.* Yes, sir. *Q.* What was your object in hiring to the railroad company as a fireman? *A.* The only purpose of it was to earn a living. The only purpose was, I wanted to become a locomotive engineer." For the plaintiff it is insisted that the question whether plaintiff had any promise of promotion by any officer of the company was competent, and that the only thing that was wrong was the answer of the witness, which was not responsive to the question. We cannot concur in this view. We think the question as to a promise was not competent, as inquiring as to a matter entirely too speculative and remote, within the rule announced by the supreme court of the United States in *Richmond & Danville R. R.* v. *Elliott,* 149 U. S., on p. 268 (13 Sup. Ct., 837; 37 L. ed., 728). It is there said: "We think there was error in the admission of this testimony.

It did not appear that there was any rule on the part of the Central Company for an increase of salary after a certain length of time, or that promotion should follow whenever a vacancy occurred in a higher grade of service.    The most that was claimed was that, when a vacancy took place, a subordinate, who had been faithful in his employment and had served a long while, had a chance of receiving preferment.    But that is altogether too problematical and uncertain to be presented to a jury in connection with proof of the wages paid to those in such superior employment.    Promotion was purely a matter of speculation, depending, not simply upon the occurrence of a vacancy, but upon the judgment, or even whim, of those in control.    Of course, there are possibilities and probabilities before every person, particularly a young man, and a jury, in estimating the damages sustained, will doubtless always give weight to those general probabilities, as well as those springing from any peculiar capacities or faculties.    But that is a different matter from proving to the jury the wages which some superior officer receives, and then exaggerating, in the minds of the jury, the amount of the damage which has been sustained, by evidence tending to show that there is a chance of plaintiff being promoted at some time to such higher office.    It is enough to prove what the plaintiff has been in fact deprived of, to show his physical health and strength before the injury, his condition since, the business he was doing (*Wade* v. *Leroy,* 20 How. [U. S.], 34 [15 L. ed., 813] ; *Nebraska City* v. *Campbell,* 2 Black [U. S.], 590 [17 L. ed., 271] ; *Vicksburg & Meridian Railroad* v. *Putnam,* 118 U. S., 545, 554 [7 Sup. Ct., 1; 30 L. ed., 257), the wages he was receiving, and perhaps the increase which he would receive by any fixed rule of promotion.    Beyond that it is not right to go and introduce testimony which simply opens the door to a speculation of possibilities."    This is certainly sound doctrine, and we give it our hearty approval, but do not think the principle announced finds application here as to the question

objected to, for the reason that the witness distinctly answered, .
so far as any responsive answer was cóncerned, that no promise
of promotion was made by any officer of the company.    The
jury, therefore, had before them the distinct and positive decla-
ration of the plaintiff himself that no such promise was made to
him with respect to promotion by any officer of the company.
Having answered the question, the witness then went on to say—
what was not responsive to the question—that a Mr. Bell, who is
not shown to have held any office at all in the company, merely
expressed the wish that he had been well, so that he might have
had him running an engine during the time he had been sick.
This part of the answer does not state that there was any prom-
ise—the witness had already said that there was none—but con-
tained matters not responsive to the question, which, if the de-
fendant wished to exclude, he should have made a motion to that
effect.

All the other questions and answers set out above are not with
respect to a promise, but along the same line of interrogation
which had been previously addressed to the witness, Wainwright,
subsequently to be noticed in this opinion.    It seems very clear
that the learned counsel who represented the appellant in the
court below regarded the line of interrogation embraced in these
very questions as being the same that was pursued with respect
to the interrogatories and answers addressed to Wainwright, none
of which was objected to.    These latter interrogatories and an-
swers of the plaintiff above set out, not having been objected to
below, cannot, of course, be objected to here.    So that the only
thing which the defendant reserved below, so far as this testi-
mony is concerned, was the single objection to the question
whether plaintiff had any promise of promotion by any officer
of the company, which question was explicitly answered by the
witness to the effect that no such promise had been made.    The
manifest difference, therefore, between the testimony in this
case and the testimony in the case of *Richmond & Danville R. R.*

v. *Elliott, supra,* shows plainly that there is nothing in this testimony to show any promise of any sort, and that, so far as the other questions and answers are concerned, no objection was reserved. This falls far short of the testimony on this point in the case of *Richmond & Danville R. R.* v. *Elliott, supra.* The witness there was asked this question: "What were your prospects of advancement, if any, in your employment on the railroad, and of obtaining higher wages?" And he answered that he thought that by staying with the company he would be promoted; that in the absence of the yardmaster he had sometimes discharged his duties, and also in like manner temporarily filled the place of other employes of the company of a higher grade of service than his own; that there was a system by which you go in there as coupler, or train hand, or in the yard, and if a man falls out you stand a chance of taking his place; and that the average yard conductor obtained a salary of from sixty to seventy-five dollars a month. There is no evidence in the testimony objected to that this man had ever discharged the duties of any one higher in the service than himself, and especially is there no evidence of any system of promotion at all by this railroad. It is earnestly urged, however, that this testimony must be taken in connection with the previously delivered testimony of the witness, Wainwright. This witness, Wainwright, was permitted to testify that "he ran a locomotive for the Newman Lumber Company, and that the course of the training usually pursued by a man who wanted to become a locomotive engineer was to begin by firing a locomotive, and that a man had to fire two, three, or four years before promotion, but that promotion sometimes occurred more quickly on new roads, and that that was the only way now to secure such promotion, and that the pay of a fireman was from forty-five to one hundred dollars per month, and that of a locomotive engineer from eighty to one hundred and twenty-five dollars per month." But the remarkable fact about this testimony is that the counsel for the defendant who tried this

cause in the court below allowed all this testimony to go to the jury without the slightest objection.    Learned counsel who represent the defendant here cannot invoke the aid of this testimony, and, by adding it to the incompetent testimony we have referred to, make out of both, taken together, an available objection.    He could only have done it if proper objection had been interposed to Wainwright's testimony in the court below.    To hold otherwise would be to permit the appellant to reverse the cause because of the force of the added testimony of Wainwright, which testimony the defendant permitted to go to the jury without any objection whatever.    This, of course, cannot be done.

But it is insisted in the next place that there was evidence of the poverty of the plaintiff which ought not to have been permitted to go to the jury.    In the cross-examination, the plaintiff was asked whether he did not work.    He stated that he did not, but that a man wanted to go around, if he could not work.    He was then asked: "What particular business made you go around so early?" and he answered: "I was in the house so long I wanted to get about.    I was here so long I wanted to get to my father-in-law's, in Scott county."    The object of this testimony was to show, if possible, what work or business, if any, the plaintiff had.    On redirect examination, he was asked: "You stated in your cross-examination you went away from here about the 22d of April to your father-in-law's.    State to the court and jury why you left here and went to your father-in-law's."    He answered, after the objection was overruled: "I left here because I had no business to make a living at, and didn't have the means to stay here on.    I have been living with my father-in-law since that time."    We think the question as to why he went to his father-in-law's house was a perfectly competent question; it was simply a reëxamination on the identical line of interrogation along which, as above shown, plaintiff had been examined.    If the answer can be properly held to show with the clearness required to make it objectionable that he was a poor man, then it

was clearly irresponsive to the question, and gave what the question did not call for, and defendant should have objected to the answer on that ground and moved to exclude it from the jury. No such objection was made.    Certainly, where a question perfectly proper in itself is asked, and the only error consists in the witness making an answer utterly irresponsive and containing matter clearly objectionable, it is the duty of the party objecting to the answer to move to exclude that answer.    But, in addition to this, we do not think the answer can be given the large significance learned counsel for appellant would have us to attach to it, as showing that the plaintiff was a poor man without property. In the case of *Railway* v. *McLellan,* 80 Miss., 708 (32 South. Rep., 283), it was said that the testimony in that case showed "that the plaintiff was poor and had no property and no money." The testimony here does not, in any positive terms, show that the plaintiff was even poor, much less that he had no property and no money.    So large an inference as that of absolute poverty cannot justly be drawn from testimony on this point, so very scant and meager.

Lastly, it is insisted with great earnestness that the verdict is grossly excessive.    The testimony shows that the plaintiff was a young man in vigorous health, working as a fireman; that he was twenty-four years old, married, and earning about forty dollars a month before the injury; that since the injury he had not earned four dollars; that he had tried a job of sawing with a cross-cut saw, but, having to stand on one foot, could not stand it, and had to give it up; that the injury was permanent, Dr. Ross, the railroad physician, so testifying; that one leg would always be shorter than the other, and crooked; that it took five minutes to get his head and neck from the timbers clinching them, and nearly choking him to death, and between two and three hours to get the timber away so as to free his leg and foot, which had been crushed; when released he was unconscious part of the time.    It was the province of the jury, and the jury alone,

to measure in dollars and cents the amount due him for physical and mental anguish and suffering, and, unless in a case where the verdict plainly shows that the jury must have been influenced by passion, prejudice or corruption, this court never interferes with their finding· as to damages. The defendants secured an instruction, No. 19, which is as follows: "The court instructs the jury for the defendant, that in the event they do find that the defendant was alleged in the declaration, and that such negligence was the proximate cause of the injury, and that the plaintiff's negligence did not contribute to his injury, and they find for the plaintiff, then they are the sole judges as to the amount of damages sustained by the plaintiff, and will determine said damages from the testimony.; and in determining such damages they may take into consideration the amount of wages earned by the plaintiff, and the sum of money, less any amount that the plaintiff can or may earn by the reasonable employment of his mental and physical energies, that would produce a similar income. The jury can only award compensatory damages, and are not authorized to allow anything as a punishment to defendant, or to allow anything except a reasonable compensation in dollars and cents, to be arrived at and made up from the testimony in the case and from no other source."

It will be seen from this instruction that the jury were expressly told not to allow anything as a punishment to the defendant, and, further, not to allow anything but reasonable compensation in dollars and cents, to be arrived at and made up from the testimony in the case and from no other source. They were particularly and explicitly held to the strictest possible rule in favor of the defendant company on this subject. Their verdict must be accepted as responsive to this instruction. This court has no scale delicate enough to weigh physical and mental anguish. At best it is an extremely difficult task. The law has committed this delicate task to the unbiased judgment of the twelve plain, practical, every-day men who compose the jury,

and it can nowhere be more safely rested than in the application of their good sense and honest judgment to the particular facts proven in each particular case. We cannot say on the facts in this case that their finding is not warranted. If the highest order of legal ability and the most consummate skill in the presentation of a case could avail to save a failing cause, this judgment would be reversed; but the very right of this case stands out in such clear relief, it is so manifest that substantial justice has been done and that no other result could reasonably be reached on another trial, that we do not feel warranted in disturbing the verdict.

*Affirmed.*